IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 29, 2008 Session

**STATE OF TENNESSEE v. PATRICK SMALLWOOD**

**Appeal from the Criminal Court for Monroe County**
**No. 06127     Carroll L. Ross, Judge**

_____

**No. E2007-02288-CCA-R3-CD - Filed January 16, 2009**

_____

Appellant, Patrick Smallwood, was convicted by a jury of one count of aggravated sexual battery and one count of attempted aggravated sexual battery. On appeal, Appellant challenges the sufficiency of the evidence. We determine that the evidence was sufficient to support the convictions. Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J. and D. KELLY THOMAS, JR., J., joined.

Steven B. Ward, Madisonville, Tennessee, for the appellant, Patrick Smallwood.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Jerry N. Estes, District Attorney General and Andrew Freiberg, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Appellant was indicted by the Monroe County Grand Jury in February of 2006 for two counts of rape of a child and two counts of aggravated sexual battery after allegations were made by his two stepdaughters, B.S. and S.S.[1]

At trial, the eleven-year-old victim, B.S., testified that Appellant was her stepfather at the time of the incidents, which occurred for the first time when she was eight years old. At the time, they lived in a "yellow house." According to B.S., Appellant was with her in the master bedroom, and Appellant put his hands down her pants and touched on the outside of her "monkey." B.S.

_____

[1]It is the policy of this Court to refer to minor victims of sexual abuse by their initials.

further claimed that Appellant touched her "on the bad places" with his hand and with his "ding dong." B.S. stated that Appellant told her not to tell anyone else about the incident.

B.S. testified that the last incident occurred sometime between June and July of 2005. B.S. remembered that it was before her tenth birthday, which was the first week of July. At the time, B.S., her mother, her siblings, and Appellant were living at the Ballplay Apartments. B.S.'s mother, Linda Smallwood, was at work. B.S.'s younger brother and sister were staying with their "Aunt Beth." Once again, B.S. testified that she and Appellant were alone together in her mother's bedroom when he placed his hand in her pants "between her monkey." B.S. explained that Appellant touched the outside of her private area. Again, Appellant told her not to tell anyone about the incident.

B.S. also testified about an incident that took place while they were living in a trailer. She claimed that Appellant was using drugs during this incident and described Appellant as "woozy." She explained that the abuse occurred because Appellant was taking drugs. B.S. stated that Appellant tried to cut himself after one of the incidents. Appellant later told B.S. that he was sorry for touching her and that he did not mean to do it. B.S. never reported the abuse to her mother because she was afraid that she would get into trouble.

B.S. reported the abuse to someone from the Department of Children's Services. She later spoke with Tammy Walker of the Children's Advocacy Center and gave a videotaped interview. B.S. did not remember giving the videotaped interview. Defense counsel introduced the videotape into evidence for impeachment of B.S. The parties stipulated that the introduction of the videotape was for identification purposes only. On the videotape, B.S. claimed that Appellant penetrated her on at least one occasion. Further B.S. detailed an incident that occurred in a pickup truck while her brother and sister were asleep in the backseat. B.S. also gave information about at least two other incidents about which she did not testify at trial. Defense counsel did not question B.S. about the inconsistencies in her statement and her testimony at trial.

B.S. confirmed that she told the police on one occasion that two men with knives had kidnapped Appellant. She claimed that she told the truth about the incident.

Ms. Smallwood testified that B.S. was four years old when she and Appellant got married. Ms. Smallwood and Appellant divorced on November 22, 2006. She described Appellant as a wonderful father but explained that after he started abusing drugs in 2004, he changed. The family, including B.S., her two younger siblings, and an older child that belonged to Appellant, lived in a yellow house in Sweetwater, Tennessee from approximately 2003-2005. The house was owned by Appellant's mother. Ms. Smallwood was working at Sonic at the time, "mostly" at night. Appellant worked third shift at "Carlex." While Ms. Smallwood was at work, either Appellant or his seventeen-year-old daughter watched the other children. Ms. Smallwood stated that Appellant had a "habit of running off and staying gone two or three weeks at a time and then coming home."

In February of 2005, after Ms. Smallwood and Appellant separated, she and the three youngest children moved out of the house. Ms. Smallwood and the children stayed with Mrs. Smallwood's mother for about two weeks. After that time, they moved into an apartment on Ballplay Road in Madisonville, Tennessee. Ms. Smallwood started working at "Jiffy." Appellant stayed at the apartment during the summer of 2005 and would sometimes watch the children while she worked at night. B.S. raised allegations of abuse after the divorce papers were filed.

A pediatric specialist, Dr. Kimberly Thompson Breeden, oversaw the examination of B.S. for signs of sexual abuse at the Children's Advocacy Center in Athens, Tennessee. The ultimate results of the tests were inconclusive. Even though B.S.'s urine initially tested positive for a sexually transmitted disease, further testing produced a negative result.

Gail Fridley, Appellant's mother, testified that the police questioned her in September or October of 2005 about Appellant's alleged kidnapping. According to Mrs. Fridley, Appellant was at her house working all day that day.

Appellant took the stand on his own behalf. According to Appellant, he has smoked marijuana since he was thirteen years of age and was using drugs around the time the offenses allegedly occurred. Appellant also testified that Mrs. Smallwood smoked marijuana. Appellant insisted that he never touched B.S. and treated her as his own child. When the couple separated in early 2005, everyone in the family was devastated. After the separation, he tried to visit with B.S. Appellant stated that, as a result of the allegations of sexual abuse, his life was ruined and he had attempted suicide.

At trial, the jury also heard testimony from S.S., B.S.'s younger sister. She testified that Appellant gave her a "bad touch" in the "yellow house." Then S.S. testified that she could not remember when or where the touch occurred. At the conclusion of the State's proof, the trial court dismissed Count Four of the indictment, which charged Appellant with the aggravated sexual battery of S.S. The State then dismissed Count Three of the indictment which charged Appellant with aggravated sexual battery of B.S. Further, the parties agreed that there was no proof of penetration entered into evidence by the State. As a result, the State amended the two remaining charges to aggravated sexual battery, and the case proceeded to the jury on two counts of aggravated sexual battery.

At the conclusion of the jury trial, Appellant was found guilty of one count of aggravated sexual battery and one count of attempted aggravated sexual battery. After a sentencing hearing, the trial court sentenced Appellant to ten years for aggravated sexual battery and four years for attempted aggravated sexual battery. The trial court ordered Appellant to serve his sentences consecutively to each other, for a total effective sentence of fourteen years.

*Analysis*

On appeal, Appellant challenges the sufficiency of the evidence. Specifically, Appellant points to the inconsistencies between B.S.'s testimony at trial and the statements that she made on the videotape. Appellant argues that the inconsistent testimony coupled with B.S.'s "strong motivations for lying" to prevent Appellant from taking custody of her brother and sister warrant a "reversal due to the insufficiency of the evidence." The State disagrees, asserting that the evidence "overwhelmingly" established Appellant's guilt.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the "State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

Aggravated sexual battery is "unlawful sexual contact with a victim by the defendant . . . accompanied by any of the following circumstances: . . . (4) The victim is less than thirteen (13) years of age." T.C.A. § 39-13-504(a)(4). Sexual contact includes "the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification . . . ." T.C.A. § 39-13-501(6). Intimate parts includes "the primary genital area, groin, inner thigh, buttock or breast of a human being." T.C.A. § 39-13-501(2). The following statute defines criminal attempt:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

(1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.
(b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

T.C.A. § 39-12-101(a), (b).

By challenging the inconsistencies in the testimony of the State's primary witnesses, Appellant invites this Court to reassess the trial evidence and substitute our own inferences and credibility determinations for those of the jury. We reject the invitation, as we must, pursuant to our circumscribed standard of appellate review. Again, a jury verdict approved by the trial court accredits the State's witnesses and resolves all conflicts in the evidence in the State's favor. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). The proof at trial showed that Appellant touched B.S. inappropriately for the first time when she was eight years old and they were living in a yellow house. According to B.S.'s testimony, Appellant placed his hands under her clothes and touched her "monkey." Appellant also touched B.S. sometime between June and July of 2005 when they were living on Ballplay Road. B.S. was in her mother's bedroom, and Appellant placed his hand inside her pants and touched the outside of her genital area. The jury was presented with the videotaped interview of B.S. in which she gave a slightly inconsistent version of the incidents by claiming that there was penetration and that there was also an incident that occurred in a truck where her brother and sister were present. The jury was presented with the statements made by B.S. in the videotaped interview and compared them to her testimony at trial. In so doing, the jury was able to assess her credibility. Despite the inconsistencies in the testimony and videotape, the jury found that the proof supported a conviction for aggravated sexual battery and attempted aggravated sexual battery. We agree. We determine that the jury was presented with ample evidence to support the convictions. Appellant is not entitled to relief on these issues.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE